UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HARI BIDASARIA,

        Plaintiff,

                                      Case Number 10-15079
v.                                    Honorable Thomas L. Ludington

CENTRAL MICHIGAN UNIVERSITY,

        Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT, DISMISSING PLAINTIFF'S FEDERAL CLAIMS
WITH PREJUDICE, DECLINING JURISDICTION OVER PLAINTIFF'S STATE LAW
CLAIMS, ORDERING SUPPLEMENTAL BRIEFING, AND DENYING AS MOOT
PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

On December 22, 2010, Plaintiff Hari Bidasaria filed a complaint against Central Michigan

University alleging claims for wrongful termination based on national origin and retaliation in

violation of Title VII of the Civil Rights Act of 1964 and Michigan's Elliot Larsen Civil Rights Act

("ELCRA"). Plaintiff's age discrimination claim was dismissed pursuant to the parties' stipulation.

Now before the Court is Defendant's motion for summary judgment (ECF No. 21), Defendant's

motion for sanctions (ECF No. 25), and Plaintiff's motion to compel discovery (ECF No. 32).

Defendant contends that CMU is not an entity subject to suit, that Plaintiff's claims are barred by

an arbitration decision, and that Plaintiff cannot establish a prima facie case for wrongful termination

or retaliation based on his national origin. A hearing was held on January 10, 2012 to address

Defendant's motions. For the reasons provided herein, the Court will grant in part and deny in part

Defendant's motion for summary judgment and decline jurisdiction over Plaintiff's ELCRA claims.

## I.  Facts

Plaintiff, who is of Indian descent, was hired by CMU in the Computer Science Department

in 1984. He was granted tenure in 1988 and was employed as a Professor in that department until 2009. The Computer Science Department is an academic and administrative subdivision of CMU's College of Science and Technology. Dr. Jane Matty was the Interim Dean of the College of Science and Technology from September of 2009 until July 2011. The dean is the official supervisor of the regular faculty and is responsible for disciplinary action. Dr. Matty was preceded in that position from 2008 to September of 2009 by Dr. Ian Davison, who became the Interim Vice Provost for Research. Dr. Michael Stinson, a CMU faculty member and a member of the Faculty Association, has been employed in the Computer Science Department since 1988, and has served as the department Faculty Chair since 2007. The Faculty Chair, who is a member of the Faculty Association bargaining unit, runs department meetings, makes course assignments, but has no supervisory duties and is not involved in disciplinary decisions.

Plaintiff, Defendant emphasizes, has a history of disputes concerning CMU's leave procedures. In December of 1992, Plaintiff took a personal trip to India, but did not return to work on time and missed classes in January of 1993 without obtaining leave to do so or notifying the CMU Computer Science Department. Then-Faculty Chair Neelima Shirkhande, who is also of Indian descent, put Plaintiff on notice on January 29,1993, that missing work was not acceptable. On February 12, 1993, she further notified Plaintiff of her additional concerns about him missing classes and her receipt of student complaints. Dr. Shirkhande had additional problems with Plaintiff in August of 1993 when he gave a final examination one week early, thereby failing to hold class for the mandatory twelve weeks without permission. He also did not respond to her inquiries about his conduct.

In August 2000, Plaintiff was absent from faculty preparation week. Faculty preparation

-2-

week is intended to be a time when faculty prepare equipment for laboratories, develop and/or update of course syllabi, assignments and teaching materials, update course curriculum that might be taught by multiple faculty members, and have meetings where the Department's and CMU's expectations are discussed. Faculty members are contractually obligated to attend preparation week. Then-faculty Department Chair Gongzhu Hu warned Plaintiff that he was not to be absent from faculty preparation week again.

On December 21, 2000, Plaintiff requested approval for a 12-day leave to travel to India for a wedding. Then-Dean Robert Kohrman denied Bidasaria's request for a paid leave, but approved Bidarasia's request for unpaid leave in the middle of a semester. Mid-semester leave was uncommon. Upon returning from leave, Plaintiff submitted a complaint that his request for paid leave had been approved by then-Provost Richard Davenport. Dean Kohrman nevertheless allowed Plaintiff to be paid for the leave because of Bidasaria's misunderstanding of what type of leave was approved. Dean Kohrman, however, advised Plaintiff that future leave matters were to adhere to the contractual requirements of the collective bargaining agreement ("CBA").

From December 8 to December 17, 2003, Plaintiff took a trip to India and canceled his final week of classes. Plaintiff did not notify Department Chair Hu before he took the leave. Dr. Hu was concerned that Plaintiff's unauthorized leave violated CMU policy and informed him that if he were out for personal reasons, that he must "apply for leave and get approval from the Dean before [] departure. Leaving without notice is a violation of the contract." ECF No. 21 Ex. 14 at 2.  As a result of Bidasaria's unauthorized leave, Dean Kohrman docked him eight days pay. Plaintiff grieved the discipline. CMU denied the grievance.

In the grievance process, CMU, the Faculty Association, and Plaintiff reached an agreement

resolving the discipline. Plaintiff agreed that he would forfeit four days of pay due to his unauthorized absences from December 8, 2003 through December 17, 2003, accept a letter of discipline, and acknowledge that he "recognizes and accepts his responsibility to follow all University policies, including and especially, those policies governing absences from, or unavailability of work." ECF No. 21 Ex. 17; Ex. 1 at 109-10. The disciplinary letter also warned Plaintiff that "[a]ny repetition of failure to obtain proper authorization for an absence from [his] work responsibilities will necessarily lead to additional, and potentially more severe, discipline, up to and including loss of employment for cause." ECF No. 21 Ex. 17; Ex. 1 at 110-11.

Although Plaintiff had resolved the issue of his unauthorized absence by admitting to the misconduct, voluntarily signing a last chance settlement agreement and accepting the loss of four days of pay, he subsequently filed an EEOC charge claiming that his wages were reduced because he was Asian Indian. ECF No. 21 Ex. 18. Faculty Chair Stinson was identified in Plaintiff's civil rights charge as a Caucasian professor who had engaged in similar misconduct but not been disciplined. ECF No. 34 Ex. 3. Stinson became aware of Bidisaria's EEOC charge when a woman from the EEOC contacted him to ask some questions regarding the charge. The EEOC dismissed Plaintiff's discrimination charge due to insufficient evidence. ECF No. 21 Ex. 19.

On July 8, 2008, then-Department Chair Michael Stinson reassigned Plaintiff from teaching CPS 110 because he did not intend to use the text book selected by the department. Instead, he scheduled Plaintiff to teach CPS 106, 107, and 108. ECF No. 21 Ex. 20; Ex. 4 at 34-36. On March 24, 2009, Plaintiff complained to then-Associate Dean Jane Matty and Dean Ian Davison that Stinson did not assign him to teach CPS 100 during the summer semester, that Stinson was angry with him, had waved his finger at him and said "Hari you lie," and said that Plaintiff would never

-4-

get a CPS 100 section in the summer as long as Stinson was Chair. ECF No. 21 Ex. 20; Ex. 1 at
128-30.  Plaintiff did not explain what he was accused of lying about and Stinson denies these
allegations, and stated at his deposition that he did not remember the conversation. ECF No. Ex. 4
at 39, 50-55. On April 9, 2009, a meeting was held between Matty, Davison, Stinson and Plaintiff
during which the dispute was resolved by Plaintiff being assigned CPS 100 for the first three weeks
of the summer because he did not want to teach for more than three weeks for personal reasons. ECF
No. 21 Ex. 22; Ex. 4 at 52-53. Plaintiff also agreed to upgrade the textbook that he was using in CPS
100 and to use a newer version of Microsoft Office 2007 in his other courses, which was one of
Stinson's concerns.  Plaintiff did not file a discrimination and harassment complaint under the CMU
complaint procedure nor did he make any allegation of retaliation by Stinson due to the filing of his
civil rights charge in 2004 or of discrimination or harassment based on national origin because of
the dispute. ECF No. 21 Ex. 2 at 6-7; Ex. 1 at 117-19; Ex. 23; Ex. 24.  Stinson did not assign
Plaintiff a summer course during the summer of 2009. He did change Plaintiff's course schedule for
Fall 2009 from CSP 106 and 107 to CPS 100 where he would be assisting two other professors.

        Plaintiff subsequently missed the Fall 2009 faculty preparation week without authorization
because he was on a personal trip to India. Plaintiff acknowledged in his deposition that he knew
it was a "serious situation" that he had missed faculty preparation week in 2009, especially "after
what happened in 2003-4." ECF No. 21 Ex. 2 at 156. On August 23, 2009, Stinson informed Dean
Davison that Plaintiff had missed the entire preparation week including two required department
meetings. Plaintiff disputes that these meetings were mandatory, and the bylaws of the department
do not reflect that the meetings were mandatory. As a result, on August 28, 2009, Davison informed
Plaintiff that he was beginning an investigation; which could lead to further discipline. ECF No. 21

Ex. 25-26. Plaintiff responded by admitting that he engaged in misconduct by missing faculty

preparation week, stating

> I want to emphasize that I am not trying to pass blame somewhere else. I accept full
> responsibility for this; the fault was mine and only mine. I want to say that it was not
> "willful." To the contrary, particularly over the last few years, I have been very
> concerned/worried that something like this does not happen. But it did happen - now
> I ask for your mercy and understanding.

ECF No. 21 Ex. 27.

Dr. Jane Matty, who became Interim Dean in September of 2009, completed the investigation

and issued an investigation report on September 24, 2009. She concluded, in light of Plaintiff's 2004

discipline and admitted misconduct of missing faculty preparation week, that Plaintiff had violated

CMU policies and that she was providing him notice of intent to terminate his employment as

required by CBA procedure. ECF No. 21 Ex. 28. In the report, Dr. Matty concluded that despite

Plaintiff's claim that he did not know the correct date when the Fall 2009 Semester was to begin,

he had sufficient notice of the date because the CBA, which Plaintiff received a copy of, provided

that the faculty preparation week began on Monday, August 17, 2009. His absence from faculty

preparation week was consequentially unexcused. ECF No. 21 Ex. 28 at 5; Ex. 29 at 45. Dr. Matty

concluded that Plaintiff's absence from faculty preparation week violated Article 29 of the CBA

regarding leaves of absences. ECF No. 21 Ex. 28 at 5-6. Dean Matty also concluded that, despite

Plaintiffs claim that he relied on a "tentative" schedule by "mistake," he nonetheless had appropriate

notice of the start of faculty preparation week. ECF No. 21 Ex. 28 at 6. The official schedule is

located in the collective bargaining agreement, and the "tentative" schedule had a disclaimer

directing faculty to the CMU website for updates. Plaintiff did not check the website. ECF No. 21

Ex. 28 at 6.In making her decision, Dr. Matty also took into consideration Plaintiff's history of

unexcused absences and the fact that he had been warned in 2004 that any further unexcused absences could lead to termination. ECF No. 21 Ex. 28 at 7. Considering all of these factors, Dean Matty concluded that Plaintiff's misconduct was just cause for discharge. *Id.* Although Plaintiff requested reconsideration of the discharge decision in an October 8, 2009 letter, Dr. Matty was not persuaded by his pleas and made the final decision to carry out the discharge because he was absent without leave during faculty preparation week in the Fall of 2009.

Plaintiff filed a grievance with the Faculty Association challenging his discharge as a violation of the CBA. He appealed the discharge to final and binding arbitration under the CMU/Faculty Association CBA. ECF No. 21 Ex. 36; Ex. 29. The Faculty Association investigated the facts and represented Plaintiff in the arbitration. Plaintiff did not raise the issue of unlawful discrimination in the grievance process. He did express a concern about being discriminated against, which the Faculty Association could have pursued, but chose not to based on its investigation. ECF No. 21 Ex. 37 at 23. The Faculty Association hired a labor counsel to represent Plaintiff at the arbitration. The arbitrator ultimately denied the grievance and concluded that CMU had acted reasonably and had just cause to terminate Plaintiff's employment.

## II.    Defendant's Motion for Summary Judgment

### A.    Arbitration of Plaintiff's Claims

Defendant argues that Plaintiff's claims are barred by the arbitration decision. In *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), the United States Supreme Court held that a collective bargaining agreement expressly requiring union members to arbitrate age discrimination claims was enforceable. In *14 Penn Plaza*, unionized employees filed a grievance through their union grieving certain job reassignments and alleging various contract violations including age discrimination. The

union requested arbitration but later withdrew the age discrimination claims. The individual employees then filed an age discrimination lawsuit. The Supreme Court held that the ADEA claim was barred by the arbitration agreement in the collective bargaining agreement because the National Labor Relations Act gave the union, as the employees' exclusive bargaining agent, the authority to agree to binding arbitration of age discrimination claims and clearly required all members to arbitrate ADEA claims.

 In this case, the CBA between CMU and Plaintiff's Union prohibits CMU from discharging a tenured faculty member except for just cause, prohibits illegal discrimination, and provides for final and binding arbitration. ECF No. Ex. 29 at 11, 14, 34-35,43; Ex. 1 at 121-22. Plaintiff was a tenured faculty member and, under the CBA, tenured faculty members can only be terminated for specified reasons, including just cause. ECF No. 21 Ex. 29 at 34-35. The grievance procedure states that it is the only procedure available for resolving claims that arise under the agreement. ECF No. 21 Ex. 29 at 7. Moreover, the CBA not only provides for final and binding arbitration, it also specifically provides that claims of discrimination relating to tenure (e.g. discharge of tenured faculty) are subject to arbitration. ECF No. 21 Ex. 29 at 11; Ex. 37 at 23. Plaintiff testified at his deposition that his national origin discrimination claims were raised in the arbitration but not in the grievance document. ECF No. 21 Ex. 1 at 159. Defendant contends that, as a result, Bidasaria's claims of discrimination were subject to the grievance procedure and binding arbitration and that any right to pursue those claims in federal court was waived under the CBA pursuant to the conclusions in *14 Penn Plaza*.

 In response, Plaintiff emphasizes that a collective bargaining agreement must expressly provide that statutory claims of arbitration are subject to mandatory arbitration in order to be

-8-

binding. *14 Penn Plaza*, 129 S.Ct at 1466-67. In the present case, the collective bargaining agreement does not require complaints or charges of discrimination to be brought and makes no mention of statutory discrimination causes of action: "Complaints or charges of illegal discrimination in connection with reappointment, tenure, or promotion may be brought under this Article." ECF No. 21 Ex. 29 at 8. Moreover, the arbitrator is prohibited from considering statutory claims for discrimination, as the CBA provides that matters to be considered "shall consist only of disputes about alleged violations of this <u>Agreement</u>, or department procedures developed under Article 10 (Department Procedures, Criteria, Standards, and Bylaws), or of matters under Paragraph 18 of Article 8 (Grievance Procedure)." ECF No. 21 Ex. 29 at 12 (underlining in original). The CBA also recognizes that it is not the only protection or remedy afforded by stating that the parties to the CBA "recognize that the federal and state law, as well as university policies, provide multiple protections and remedies for equal opportunity and affirmative action." ECF No. 21 Ex. 29 at 15.

The CBA does not expressly mandate that Plaintiff's statutory claims be subject to arbitration as the sole remedy. Moreover, although Plaintiff could have sought his remedy on these claims through the arbitration process, his allegations of national origin discrimination and retaliation are not included in the grievance submitted to the arbitrator, nor are such claims referenced in the arbitral decision. ECF No. 21 Exs. 36, 38. Plaintiff may have indicated at his deposition that these claims were raised during the arbitration, but none of the arbitration documents provided support this statement. The arbitrator only addressed whether CMU has just cause for the discipline imposed and whether the degree of discipline was unreasonable. Accordingly, Defendant's motion for summary judgment on this basis will be denied.

-9-

### B.   Plaintiff's Prima Facie Case for Discrimination Based on National Origin

Plaintiff's primary claim in this case is that he was terminated because of his national origin. In such cases, courts apply the standard set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Plaintiff must first establish a prima facie case by showing that he: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) that similarly-situated persons not in the protected class were treated differently, i.e. not subjected to the same adverse action. *Thurman v. Yellow Freight Sys. Inc*., 90 F.3d 1160, 1166 (6th Cir. 1996). "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which gave rise to an inference of unlawful discrimination." *Macy v. Hopkins*, 484 F.3d 357,365 (6th Cir. 2007) (citing *Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To be deemed similarly-situated, the individuals with whom Plaintiff seeks to compare his treatment "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hasp*., 964 F.2d 577, 582-84 (6th Cir. 1992) (emphasis omitted).

At his deposition, Plaintiff acknowledged that he was unaware of any faculty members in the Computer Science Department who missed faculty preparation week in 2009 or any other year, but offered a hearsay statement that he had been told that a faculty member in the History Department, David Rutherford, missed faculty preparation week and was not disciplined. ECF No. 21 Ex. 1 at 167. Dr. Rutherford denies this assertion, and the departmental minutes attached to his affidavit reflects that he attended the History Department retreat that took place during faculty

-10-

preparation week 2009. ECF No. 21 Ex. 39. Defendant submits that there had been no previous accounts of faculty missing prep week without authorization brought to the administration's attention in 2009, nor is there another faculty member who missed faculty preparation week after agreeing to a last chance agreement and being disciplined for failing to follow attendance procedures. ECF No. 21 Ex. 33 at 4, 9.

Plaintiff has not provided a response to Defendant's arguments on this claim. The record likewise does not offer any supporting evidence that a similarly-situated person not in the protected class was treated differently; Plaintiff only makes the general assertion that he is the only member of his department that is of Indian descent. The motion for summary judgment on Plaintiff's claim for wrongful termination based on national origin discrimination will be granted.

### C.   Plaintiff's Prima Facie Case for Retaliation

Plaintiff's second claim is that he was subjected to unlawful retaliation, resulting in his employment being terminated. To establish a prima facie case of retaliation, a plaintiff must prove that: (1) he engaged in protected activity; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection between the protected activity and the materially adverse action existed. *Abbott v. Crown Motor Co., Inc*., 348 F.3d 537, 542 (6th Cir.2003).

Defendant contends that Plaintiff cannot demonstrate a causal connection between the filing of his EEOC charge in 2004—the only alleged protected activity—and his employment being terminated in 2009. Dr. Matty, who made the decision to terminate Plaintiff's employment, had no knowledge that Plaintiff had filed an EEOC charge in 2004 at the time she made the decision to terminate his employment. ECF No. 21 Ex. 2 at 13-15, 25. Indeed, Plaintiff does not allege that

-11-

Matty retaliated against him in deciding to terminate his employment; Plaintiff instead alleges that Stinson retaliated against him by changing the courses assigned to Plaintiff or refusing to assign him summer courses in 2008 and 2009 because of the EEOC charge. Ultimately, Plaintiff appears to be alleging that Stinson's email to Dean Davison informing him that Plaintiff missed two required meetings—meetings which Plaintiff contends were not mandatory pursuant to the department's bylaws—caused the Article 16 proceeding which, in turn, subsequently led to Plaintiff's employment being terminated.

Plaintiff claims that he engaged in additional protected activity by complaining in March of 2009 that Stinson, a fellow union faculty member, had retaliated against Plaintiff by stating that he lied, not assigning him a summer course, and by being angry with him. Plaintiff claims that Stinson's statement that Plaintiff lied was in reference to the 2004 EEOC charge.  In April 2009, Plaintiff's complaint was resolved by Stinson assigning him a summer class and Plaintiff agreeing to update the version of Microsoft Office that was used in the class to assign the textbook that the department required. Stinson's concern in assigning Plaintiff the course was that he was not using the updated version of Microsoft Office or the required textbook in his classes.  Plaintiff did not advise Dean Matty what Stinson allegedly accused Plaintiff of lying about (ECF No. 21 Ex. 2 at 20) or that the retaliation was because of his 2004 EEOC charge. Dr. Matty characterized Plaintiff's complaint against Stinson as being related to a conflict regarding a scheduling issue. ECF No. 21 Ex. 2 at 6-7. In September 2009, after the investigation into his misconduct was already underway, Plaintiff accused Stinson of acting in a "very unprofessional, boorish and threatening manner," but similarly did not allege unlawful retaliation or discrimination. These accusations against Stinson, on their face, do not suggest any unlawful discrimination based on a protected characteristic or

constitute protected activity under Title VII.

In this case, Plaintiff never made a claim of national origin discrimination or retaliation to CMU prior to his discharge in 2009 other than the 2004 EEOC Charge in 2004. ECF No. 21 Ex. 32 at 13-14. Dr. Matty was not aware the Plaintiff had previously filed a charge at the time she made the decision to discharge him.  ECF No 21 Ex. 2 at 7-8. There is no evidence that Plaintiff ever complained about retaliation or discrimination to Matty and cannot therefore prove a prima facie case that Matty unlawfully retaliated against him for engaging in protected activity.  Even if Plaintiff had engaged in protected activity he has not met his prima facie burden of demonstrating a causal connection between his discharge and any alleged protected activity. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). Plaintiff has not offered any evidence of a causal connection between the 2004 EEOC Charge and Dean Matty's decision to discharge him in 2009 for his unauthorized absence from faculty preparation week.

Plaintiff responds there is a question of fact on the question of causation, because Stinson was aware of Plaintiff's EEOC Charge including Plaintiff's allegations that Stinson had been treated more favorably than Plaintiff. Plaintiff contends that Stinson sent his later email to Davison regarding his absence from the department meetings to retaliate for his being referred to in the 2004 EEOC Charge. Plaintiff alleges that the materially adverse action taken was termination of his employment. Dr. Matty, however, made the decision to terminate Plaintiff's employment. Although Stinson's email to Davison may have initiated the proceedings, Plaintiff must demonstrate a causal connection between the filing of his EEOC charge and Dr. Matty's decision to terminate his employment.  Plaintiff has not done so.

**D.    Plaintiff's Potential Harassment Claim**

Defendant also seeks dismissal of any potential hostile work environment harassment claim Plaintiff may be attempting to pursue. In order to establish an actionable hostile work environment, a plaintiff must prove that he (1) belonged to a protected group; (2) was subjected to communication or conduct on the basis of a protected classification; (3) the communication or conduct was unwelcome; (4) the unwelcome communication or conduct substantially interfered with his employment so as to create an intimidating, hostile, or offensive work environment; and (5) respondeat superior. *Chambers v. Trettco*, 463 Mich. 297, 311 (2000); *Michael v. Caterpillar Financial Services Corp*., 496 F.3d 584, 600 (6th Cir. 2007). To be actionable, harassment must be "so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment . . . simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Clark County School District v. Breeden*, 532 U.S. 268, 270-71 (2001); *Radtke v. Everett*, 442 Mich. 368, 385 (1993); *Black v. Zaring Homes, Inc*., 104 F.3d 822, 827 (6th Cir. 1996), cert. denied, 522 U.S. 865 (1997); *see Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir. 1987) (several racial slurs within three months of work did not establish racial harassment).

Neither Plaintiff's complaint nor his deposition testimony support a claim of severe and pervasive harassment based on national origin sufficient to support a hostile working environment claim. Plaintiff complained about "rude" and unspecified "unprofessional and boorish" behavior by Stinson, but does not allege that this conduct was based on his national origin. Even when rude comments are alleged with regard to a plaintiff's protected characteristic—which Plaintiff has not alleged in this case—isolated incidents of alleged rude or boorish behavior are not sufficient to

-14-

establish a hostile work environment claim, because Title VII was not meant to create a "general civility code," and the "sporadic use of abusive language, [protected characteristic ]-related jokes, and occasional teasing" are not sufficient to establish liability. *Clark v. United Parcel Service, Inc*. 400 F.3d 341, 32 (6th Cir. 2005). Therefore, to the extent that Plaintiff's complaint attempts to plead a hostile work environment claim, Plaintiff has not demonstrated that any comments or harassment were a result of his national origin.

Additionally, there is also nothing in Plaintiff's deposition testimony or his complaint to suggest that Plaintiff alleges that he filed any type of national origin harassment complaint, let alone that he filed a complaint under CMU's non-harassment policy complaint procedure. ECF No. 21 Ex. 23; Ex 34, Ex. 1 at 117-20. Under *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), the failure to file a harassment complaint in accordance with an employer's complaint procedure is a complete defense to an unlawful hostile environment harassment claim. Here, Plaintiff does not allege that any such complaint was made under the CMU procedure and Defendant is not aware of such a complaint. ECF No. 21 at 23, Ex. 1 at 119-20.

Plaintiff provides no response to Defendant's request to dismiss his possible harassment claim but refused to stipulate to dismissal of the claim. Plaintiff, however, has not pleaded or established sufficient facts to sustain such a claim, and the claim will be dismissed.

### D.    Plaintiff's State Law Claims

Because Defendants are entitled to summary judgment on all of Plaintiff's federal claims, the Court will decline to exercise jurisdiction over Plaintiff's state law claims.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966);  *Washington v. Starke*, 855 F.2d 346, 351 (6th Cir. 1988) ("It is a clear rule of this circuit that if a plaintiff has not stated a federal claim, his pendant

state law claims should be dismissed.").

### III.    Defendant's Motion for Sanctions

When an attorney submits a pleading to a federal court, and later advocates it, the attorney

certifies that to the best of his or her "knowledge, information, and belief, formed after an inquiry

reasonable under the circumstances":

> (1) it is not being presented for any improper purpose, such as to harass, cause
> unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law
> or by a nonfrivolous argument for extending, modifying, or reversing existing law
> or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified,
> will likely have evidentiary support after a reasonable opportunity for further
> investigation or discovery.

Fed. R. Civ. P. 11(b)(1)–(3).

An attorney may be sanctioned for violations of Rule 11(b), after the attorney is provided

"notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1).[1] A party seeking to file

a motion for sanctions must serve it on the opposing party pursuant to Rule 5 of the Federal Rules

of Civil Procedure, but the motion "must not be filed or be presented to the court if the challenged

paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days

after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2).[2] Defendants emphasize

that a motion for sanctions may be filed after entry of a final judgment, so long as the moving party

afforded the allegedly offending party at least twenty-one days to correct a pleading, citing *Divane*

---

[1] "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." *Id.*

[2] "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." *Id.*

*v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999).

Sanctions imposed pursuant to Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). When a motion for sanctions has been filed, sanctions may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation," if "warranted for effective deterrence." *Id.* Other possible sanctions include "nonmonetary directives" or "an order to pay a penalty into court." *Id.* Monetary sanctions cannot be imposed "against a represented party for violating Rule 11(b)(2)." Fed. R. Civ. P. 11(c)(5).

In the Sixth Circuit, "the test for the imposition of Rule 11 sanctions [is] 'whether the individual's conduct was reasonable under the circumstances.' " *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997) (quoting *Lemaster v. United States*, 891 F.2d 115, 118 (6th Cir. 1989)) (further citations omitted). The standard of "reasonable under the circumstances" is "objective," and thus, a demonstration of "good faith" does not defeat a motion for sanctions. *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 959 (6th Cir. 1990) (citing *INVST Fin. Group, Inc. v. Chem. Nuclear Sys.*, 815 F.2d 391, 401 (6th Cir. 1987)). Allegations of sanctionable conduct should not be viewed with "the wisdom of hindsight," but "by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Id.* (quoting *INVST*, 815 F.2d at 401).

Additionally, pursuant to 28 U.S.C. § 1927, an "attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Being penal in nature, this section permitting a district court to require an attorney to personally satisfy costs is to be strictly construed. *United States v. Ross*, 535 F.2d 346 (6th Cir.

-17-

1976). Sanctions are not appropriate unless an attorney is shown to have acted in bad faith, with improper motive, or with reckless disregard of duty owed to the court, and decision to award attorney fees thereunder is committed to court's discretion. *See Cypress-Fairbanks Independent School Dist. v. Michael F. by Barry F.*, 931 F. Supp. 474 (S.D. Tex. 1995); *see also Specht v. Google, Inc.*, 805 F. Supp. 2d 551 (N.D. Ill. 2011) (noting that a court has discretion to impose sanctions for unreasonably and vexatiously multiplying the proceedings when an attorney has acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice, has pursued a claim that is without plausible legal or factual basis and lacking in justification, or has pursued a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound). Section 1927 does not require a showing of subjective bad faith but, rather, is satisfied "when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir.2001) (quoting Ridder, 109 F.3d at 298). Mere negligence or inadvertence, however, will not support a § 1927 sanction. *Riddle*, 266 F.3d at 553. Rather, "[t]here must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id.* (quoting *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)). No advance service, "safe harbor" rule applies to a request for sanctions pursuant to 28 U.S.C. § 1927.

Defendant requests sanctions under Rule 11 and/or 28 U.S.C. § 1927 against Plaintiff and/or his Counsel because Plaintiff's claims are frivolous and Plaintiff's counsel has unreasonably multiplied these proceedings by refusing to dismiss these frivolous claims. Plaintiff's response, like

Defendant's motion and supporting brief, highlights the arguments made in support of and in opposition to Defendant's motion for summary judgment and suggests that Defendant erred in directing the Rule 11 motion to attorney Manda Westervelt Danielski rather than attorney Victor Mastromarco. However, additional information is needed and supplemental briefing will be requested addressing (i) the particular attorney, law firm, or party that Defendant contends "violated the rule or is responsible for the violation" of Rule 11(c)(1); (ii) a more particular explanation of the conduct Defendant contends constitutes the violation of Rule 11(b) or 28 U.S.C. § 1927; and (iii) the particular sanction Defendant seeks and the legal authority for the request.

## VI.   Conclusions

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment (ECF No. 21) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Plaintiff's federal claims are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that jurisdiction is **DECLINED** over Plaintiff's state law claims.

It is further **ORDERED** that Defendant is **DIRECTED** to file supplemental briefing addressing the issues presented above on or before **February 29, 2012**. Plaintiff's response to Defendant's supplemental briefing shall be filed on or before **March 12, 2012**.

It is further **ORDERED** that Plaintiff's motion to compel discovery (ECF No. 32) is **DENIED AS MOOT**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: February 15, 2012

-19-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 15, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS