UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HARI BIDASARIA,

          Plaintiff,

                                                         Case Number 10-15079
v.                                                Honorable Thomas L. Ludington

CENTRAL MICHIGAN UNIVERSITY,

          Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR SANCTIONS**

On February 15, 2012, the Court entered an opinion and order granting in party and denying in part Defendant's motion for summary judgment, dismissing Plaintiff's federal claims with prejudice and declining jurisdiction over Plaintiff's state law claims. ECF No. 47. The Court also ordered supplemental briefing on Defendant's motion for sanctions to address (i) the particular attorney, law firm, or party that Defendant contends "violated the rule or is responsible for the violation" of Rule 11(c)(1); (ii) a more particular explanation of the conduct Defendant contends constitutes the violation of Rule 11(b) or 28 U.S.C. § 1927; and (iii) the particular sanction Defendant seeks and the legal authority for the request. Defendant filed its supplemental brief on February 28, 2012, and Plaintiff filed a response on March 12, 2012. The factual and procedural history of the case are adequately set forth in the Court's February 15, 2012 opinion and order.

**I.     Legal Standard**

When an attorney submits a pleading to a federal court, the attorney certifies that to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances":

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b)(1)–(3).

An attorney may be sanctioned for violations of Rule 11(b), after the attorney is provided "notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1).[1] A party seeking to file a motion for sanctions must serve it on the opposing party pursuant to Rule 5 of the Federal Rules of Civil Procedure, but the motion "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2).[2] Defendants emphasize that a motion for sanctions may be filed after entry of a final judgment, so long as the moving party afforded the allegedly offending party at least twenty-one days to correct a pleading, citing *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1025 (7th Cir. 1999).

Sanctions imposed pursuant to Rule 11 "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). When a motion for sanctions has been filed, sanctions may include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the

---

[1] "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." *Id.*

[2] "If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion." *Id.*

violation," if "warranted for effective deterrence." *Id.* Other possible sanctions include "nonmonetary directives" or "an order to pay a penalty into court." *Id.* Monetary sanctions cannot be imposed "against a represented party for violating Rule 11(b)(2)." Fed. R. Civ. P. 11(c)(5).

In the Sixth Circuit, "the test for the imposition of Rule 11 sanctions [is] 'whether the individual's conduct was reasonable under the circumstances.' " *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997) (quoting *Lemaster v. United States*, 891 F.2d 115, 118 (6th Cir. 1989)) (further citations omitted). The standard of "reasonable under the circumstances" is "objective," and thus, a demonstration of "good faith" does not defeat a motion for sanctions. *Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 959 (6th Cir. 1990) (citing *INVST Fin. Group, Inc. v. Chem. Nuclear Sys.*, 815 F.2d 391, 401 (6th Cir. 1987)). Allegations of sanctionable conduct should not be viewed with "the wisdom of hindsight," but "by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Id.* (quoting *INVST*, 815 F.2d at 401).

Additionally, pursuant to 28 U.S.C. § 1927, an "attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Being penal in nature, this section permitting a district court to require an attorney to personally satisfy costs is to be strictly construed. *United States v. Ross*, 535 F.2d 346 (6th Cir. 1976). Sanctions are not appropriate unless an attorney is shown to have acted in bad faith, with improper motive, or with reckless disregard of duty owed to the court, and decision to award attorney fees thereunder is committed to court's discretion. *See Cypress-Fairbanks Independent School Dist. v. Michael F. by Barry F.*, 931 F. Supp. 474 (S.D. Tex. 1995); *see also Specht v. Google, Inc.*, 805 F. Supp. 2d 551 (N.D. Ill. 2011) (noting that a court has discretion to impose

sanctions for unreasonably and vexatiously multiplying the proceedings when an attorney has acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice, has pursued a claim that is without plausible legal or factual basis and lacking in justification, or has pursued a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound). Section 1927 does not require a showing of subjective bad faith but, rather, is satisfied "when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir.2001) (quoting Ridder, 109 F.3d at 298). Mere negligence or inadvertence, however, will not support a § 1927 sanction. *Riddle*, 266 F.3d at 553. Rather, "[t]here must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id.* (quoting *In re Ruben*, 825 F.2d 977, 984 (6th Cir. 1987)). No advance service, "safe harbor" rule applies to a request for sanctions pursuant to 28 U.S.C. § 1927.

## II.    Discussion

### A.    The  particular attorney, law firm, or party that Defendant contends "violated the rule or is responsible for the violation" of Rule 11(c)(1)

Defendant's response clarifies that it is seeking sanctions against attorneys Victor Mastromarco, who signed the complaint; Manda Westervelt-Danielski, who took the depositions in the case and would only stipulate to dismissal of Plaintiff's age discrimination claim; the Mastromarco Firm; and Plaintiff Hari Bidasaria. Plaintiff correctly notes that Section 1927 sanctions are not awardable against Plaintiff or the Mastromarco firm, and requests that Manda Westervelt-Danielski not be subjected to sanctions because she was working under Victor Mastromarco's

supervision.

Rule 11 provides that every pleading, motion, or other paper must be signed by "at least one attorney of record in the attorney's name." Rule 11(c)(1) also provides that if the rule has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation and that a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee absent exception circumstances. Defendant's brief in support of its motion for sanctions, as well as its supplemental brief, make clear that Ms. Westervelt-Danielski was working under Mr. Mastromarco's supervision, and she did not sign any of the papers that Defendant alleges were filed in violation of Rule 11. *See, e.g.*, ECF No. 48 at 6-7 ("Westervelt-Danielski told Defense Counsel that she had discussed Defendant's request that the case be withdraw with Mastromarco, and that he agreed to the dismissal of the age discrimination claim but not any other claims.") (emphasis omitted).

However, Ms. Westervelt-Danielski signed the stipulation to dismiss Plaintiff's age discrimination claim and likewise made clear in Plaintiff's motion to extend the response deadline to Defendant's motion for sanctions that she was responsible for the discovery in the case as well as the responses to Defendant's motion for summary judgment and motion for sanctions. Rule 11, since its amendment in 1993, gives the district court greater flexibility as to whom it may target with sanctions. *See* Fed. R. Civ. P. 11(c) (authorizing imposition of sanctions upon "the attorneys, law firms, or parties" responsible for violation of Rule). Ms. Westervelt-Danielski thus cannot be shielded from responsibility because Mr. Mastromarco signed the complaint and responses to Defendant's motions.

Plaintiff contends that service of the Rule 11 motion was improper because it was made on Ms. Westervelt-Danielski and not on Mr. Mastromarco.  Rule 5(b) states that "if a party is represented by an attorney, service under this rule must be made on the attorney unless the court orders service on the party." Plaintiff does not clarify whether Ms. Westervelt-Danielski has authority to accept service on his behalf even though she is not counsel of record in the case and neither party provides legal authority that fully supports their respective propositions.  Regardless of whether service on Ms. Westervelt-Danielski satisfied the requirements of Rule 11's safe harbor provision, as will be discussed below, Section 1927 sanctions are, in part, appropriate and Section 1927 does not have a safe harbor rule.

Plaintiff also notes that Defendant filed its motion for summary judgment only fifteen days after the motion for sanctions had been served upon Ms. Westervelt-Danielski and that further consideration of the motion for sanctions was "academic." A motion for sanctions under Rule 11 must be served on the offending party for a period of "safe harbor" at least twenty-one days prior to the entry of final judgment or judicial rejection of the offending contention. A party seeking sanctions must leave sufficient opportunity for the opposing party to choose whether to withdraw or cure the offense voluntarily before the court disposes of the challenged contention. *Ridder v. City of Springfield*, 109 F.3d 288, 295 (6th Cir. 1997). Accordingly, there was nothing inappropriate about Defendant's decision to file a motion for summary judgment before the 21-day safe harbor period had elapsed.

**B.      Explanation of the conduct Defendant contends constitutes the violation of Rule 11(b) or 28 U.S.C. § 1927**

Defendant contends that the conduct that constitutes a violation of Rule 11(b) or 28 U.S.C. § 1927 is the filing and failure to immediately withdraw the complaint because the contentions

therein lacked evidentiary support as well as the failure to dismiss the claims at the close of discovery because no evidence of discrimination was produced during discovery. Defendant notes that at no time during the lawsuit did Plaintiff identify any evidence of national origin discrimination, did not allege that he was treated differently than a similarly-situated individual, nor did he identify a causal connection between his discharge and his 2004 EEOC charge.  Plaintiff and his counsel likewise would not agree to a stipulated order that he was not alleging a hostile work environment claim, resulting in Defendant briefing this issue in its motion for summary judgment.

Defendant relies on the arbitration decision and associated record as putting Plaintiff and his counsel on notice that filing the complaint the instant lawsuit was frivolous. However, as noted in the Court's February 15, 2012 opinion and order, the collective bargaining agreement does not expressly mandate that Plaintiff's statutory claims be subject to arbitration as the sole remedy. Moreover, although Plaintiff could have sought his remedy on these claims through the arbitration process, his allegations of national origin discrimination and retaliation were not included in the grievance submitted to the arbitrator, nor are such claims referenced in the arbitral decision. ECF No. 21 Exs. 36, 38. The fact that the arbitrator concluded that there was just cause for Plaintiff's employment being terminated under the collective bargaining agreement is insufficient to conclude that filing a lawsuit for the claims at issue could be considered frivolous or lacked evidentiary support with no reasonable basis to believe that evidentiary support would be found in violation of Rule 11(b)(2) and (b)(3). Nor does the arbitrator's decision give rise an inference that the filing was done for the purpose of harassing Defendant in violation of Rule 11(b)(1).

Even a well-pleaded complaint may contain issues or claims that need not be tried, and should be resolved by stipulation of opposing counsel prior to trial. When counsel reach agreement on such a narrowing of issues, they reduce the amount of litigation remaining. The refusal necessarily multiplies the issues that must be tried to approve such an agreed-upon order amounts to bad faith, and thus would justify an award of attorney's fees under the court's inherent powers or under § 1927. Here, Defendant attempted to narrow the issues regarding potential claims in the complaint that need not be tried yet Plaintiff refused to agree to an order clarifying that he was not alleging a hostile work environment claim, resulting in Defendant unnecessarily briefing the issue in its motion for summary judgment. Although Plaintiff notes that this claim was not included in Defendant's January 20, 2011, letter to Plaintiff as the claims at issue, Plaintiff does not explain why he would not agree to clarify that he was not asserting a hostile work environment claim when Defendant sought to narrow the issues in the case before filing a motion for summary judgment.

Plaintiff's complaint alleges that he was terminated as a result of national origin discrimination, retaliation for filing a 2004 EEOC charge and for filing a "complaint of harassment." Defendant contends that no evidence was known at the time of the filing, nor was any identified during discovery, that Plaintiff was terminated as a result of national origin discrimination, nor did he allege that he was treated differently than a similarly-situated individual in response to Defendant's motion for summary judgment. Indeed, Plaintiff did not provide any direct evidence of national origin discrimination and Plaintiff did not provide a response to Defendant's arguments on this claim. The record does not contain any supporting evidence that a similarly-situated person not in the protected class was treated differently; Plaintiff only made the general assertion that he is the only member of his department that is of Indian descent. In his motion for reconsideration,

-8-

Plaintiff generally noted that there were well over 100 faculty members absent from department meetings during the fall 2009 preparation week, none of whom were of Indian descent, and these individuals were thus not held to the same standard and expectation as Plaintiff. As noted on the Court's May 7, 2012, opinion denying Plaintiff's motion for reconsideration, a "plaintiff cannot demonstrate a prima facie case for national origin discrimination by alluding to unidentified 'comparables' that were not of similar national origin, without further explanation regarding the circumstances of the comparable individuals who were allegedly treated more favorably. . . [e]ven under the standard espoused in *Provenzano*, . . ." ECF No. 57. Defendant is thus correct that even if evidence was not known at the time of the filing, there was not any evidence identified during discovery that Plaintiff was terminated as a result of national origin discrimination or that he was treated differently than a similarly-situated individual and Plaintiff's claim for national origin discrimination was not supported by existing law in violation of Rule 11(b)(2) and (b)(3) and Plaintiff's counsel knew or should have reasonably known that the claim was frivolous in violation of 28 U.S.C. § 1927.

Defendant, however, has not provided an adequate basis for imposing sanctions against Plaintiff. As explained, the sanctionable conduct in this case was the assertion of a national origin discrimination claim that clearly lacked evidentiary or legal support. There is no indication that Plaintiff caused or contributed to the violation: there is no evidence that Plaintiff misled his counsel or failed to provide them accurate information, or that Plaintiff provided anything but truthful deposition testimony regarding his belief that he had been treated unfairly.

Defendant also contends that Plaintiff did not produce any evidence of retaliation for filing an EEOC charge or for filing a complaint of harassment and made no attempt to identify a causal connection between his discharge and his 2004 EEOC charge. This contention is not an accurate assessment of Plaintiff's efforts. Plaintiff provided numerous instances over a lengthy period of time during which he believed he was retaliated against by Stinson, who was responsible for assigning Plaintiff's courses, and his theory was that Stinson caused his termination by submitting an email with untrue allegations to the dean.

"[I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). Stinson's email to Dean Davison—which Plaintiff contends was the last event of retaliation in a series of retaliatory occurrences—resulted in the dean initiating the Article 16 proceeding and investigation into Plaintiff's alleged misconduct. Plaintiff could not prevail on his claims because Dean Matty's decision was independently made, severing the causal link between Stinson's alleged retaliatory animosity and the adverse employment action, and he thus did not meet his burden for establishing a prima facie case for retaliation. However, this does not lead to the conclusion that Plaintiff's claim was frivolous. The filing and pursuing this claim is not the kind of egregious misconduct that warrants the imposition of fees and costs on an ultimately unsuccessful civil rights plaintiff.

-10-

**C.    The particular sanction Defendant seeks and the legal authority for the request**

Rule 11 sanctions are proper not only when a frivolous complaint is filed, but also can be awarded during the course of litigation, it becomes clear that the allegations are frivolous and instead of withdrawing a complaint, a plaintiff "continued to litigate after it became clear that his claim was frivolous, unreasonable or without foundation." *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 395 (6th Cir.2009)(the amount of sanctions must be high enough to sufficiently deter the offending conduct in the future); *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997).   When awarding sanctions, a court should generally calculate the award from the date that the plaintiff and his attorney should have realized that their claims were frivolous. *See Garner v. Cuyahoga County Juvenile Court*, 554 F.3d 624, 643 (6th Cir. 2009)(referencing sections under Section 1927); *Dearborn Street Building Assoc., LLC v. Huntington National Bank*, 411 F. App'x 847, 852 (6th Cir. 2011) (Rule 11 claims should be calculated from the date that Plaintiff and its counsel should have realized they were unsupportable, which in that case, was the date the Plaintiff received Defendant's complete file). Because "[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction," it "must be limited to truly egregious cases of misconduct." *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir.1986). The court's statement in *Jones* that attorney fee awards against losing plaintiffs in civil rights cases "must be limited to truly egregious cases of misconduct" applies to awards under § 1927 as well. *Jones*, 789 F.2d at 1232.

Defendant believes that Plaintiff and his counsel should have reasonably known that there was no factual basis to support Plaintiff's claims prior to filing the lawsuit given that the facts of the case were well developed due to the August 27, 2010 arbitration hearing and November 16, 2010 arbitration decision. After the lawsuit was filed, Defense counsel promptly alerted Plaintiff's

Counsel on January 20, 2011 to the fact that the arbitration had been conducted and that there was no evidence of discrimination or retaliation. The amount of fees and costs incurred by Defendant CMU since January 21, 2011 was about $96,926.58 ($90,265.60 in attorney's fees and $6,600.98 in costs and about $2,000 attorney's fees incurred in filing this Supplemental Brief). As previously noted, however, the filing of the complaint and participation in discovery are not conduct that supports an award of sanctions in this case.

Defendant submits that it incurred attorneys' fees and costs since the September 2, 2011 close of discovery in the amount of $33,350.74 (including $30,353.00 in attorney's fees, $997.74 in costs and about $2,000 incurred in filing this supplemental brief). Defendant does not provide any additional explanation for the costs and fees that were incurred, such as which costs and fees were attributable to the only issue that the Court has concluded constitutes sanctionable conduct—Plaintiff's national origin discrimination and hostile work environment claim after the close of discovery—or the hourly rate billed for the attorney or attorneys for whom Defendant seeks a fee award.

Defendant has not indicated which of its costs and fees were directly related to defending against Plaintiff's national origin claim as opposed to other aspects of this case, and has not explained why the conduct in this case was so egregious as to warrant and award of attorney fees against a losing plaintiff in a civil rights case. As a result, the requested attorney fees will not be awarded. However, because there is no explanation as to why Plaintiff refused to clarify that a hostile work environment claim was not being pursued, the Court will award Defendant $2000 pursuant to Section 1927 for the costs and fees incurred in filing its supplemental brief.

-12-

### III.   Conclusion

Accordingly, it is **ORDERED** that Defendant's motion for sanctions (ECF No. 25) is

**GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Defendant is entitled to sanctions in the amount of $2000.00

pursuant to 28 U.S.C. § 1927 for the costs and fees incurred in filing its supplemental brief.

Plaintiff's counsel are **DIRECTED** to pay the sanctions to defense counsel on or before **August 6,**

**2012.**

> s/Thomas L. Ludington
> THOMAS L. LUDINGTON
> United States District Judge

Dated: July 30, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 30, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS

---